**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

Hope Davis,

                Plaintiff,

       v.

Arthur Fernandez, Milton Crosby, and
Russell Blanchard,

                Defendants.

Civil Action No. 2:21-cv-01666

*Jury Trial Demanded*

**COMPLAINT**

    Plaintiff Hope Davis, by and through her undersigned counsel, brings claims against Defendants Arthur Fernandez, Milton Crosby, and Russell Blanchard, and respectfully alleges as follows:

**INTRODUCTION**

    1.      This is a case about a Black woman who was arrested without probable cause, forced to endure excessively tightened handcuffs, and then forced to sit in a jail cell overrun with feces for hours.  In the midst of the COVID-19 pandemic, Plaintiff Hope Davis was arrested simply because she voiced concerns that federal and state social distancing mandates were not being enforced.  Rather than take her protests into consideration or ignore them, officers of the Gretna Police Department ("GPD") arrested her.

    2.      Ms. Davis's humiliation did not end there.  After her unlawful arrest, she was subjected to physical and emotional mistreatment by being confined in a disgusting,

unsanitary cell for hours.  She was only released after being booked on meritless

misdemeanor charges that she continues to fight.

3.      Ms. Davis is not alone as a Black woman facing law enforcement officers

that use their authority to criminalize Black people.  Far too often, because of their

implicit or explicit biases, law enforcement officers treat Black women as suspicious or

dangerous for no reason other than the color of their skin.[1]  Black women like Ms. Davis

who exercise their constitutionally protected right to freedom of speech are especially

vulnerable.  In Ms. Davis's case and many others, law enforcement use their authority to

silence the protected speech of Black women, especially when Black women exercise

their First Amendment right to criticize law enforcement.[2]

4.      Ms. Davis brings this lawsuit to redress the officers' violations of her

constitutional rights under the First, Fourth, and Fourteenth Amendments of the United

States Constitution and her civil rights pursuant to 42 U.S.C. § 1983, as well as violations

of state law.

**JURISDICTION AND VENUE**

5.      This is an action to redress the deprivation under color of statute,

ordinance, regulation, custom or usage of rights, privileges and immunities secured to

---

[1] Michelle S. Jacobs, The Violent State: Black Women's Invisible Struggle Against Police Violence, 23 WILLIAM & MARY J. OF RACE, GENDER, & SOC. JUSTICE 39, 46 (2017).

[2] *See* Etienne Toussaint, Blackness as Fighting Words, 106 VA. L. REV. ONLINE 124 (2020), https://legacy.virginialawreview.org/volumes/content/blackness-fighting-words#_ftn15 (describing how Black identity has become "a type of public speech unprotected by the Constitution"); Juwan J. Holmes, Black Women Are Not Afforded the Freedom of Speech, MEDIUM, Aug. 25, 2020, https://medium.com/the-renaissance/black-women-dont-have-the-freedom-of-speech-928207fa6d1c; Benjamin P. Marcus, The First Amendment, Black Liberation, and You, FREEDOM FORUM, June 11, 2020,https://www.freedomforum.org/2020/06/11/the-first-amendment-black-liberation-and-you/ ("While the First Amendment now applies to all in law, it does not apply equally in action").

Plaintiff by the Constitution and laws of the United States.  Plaintiff brings this action

pursuant to 42 U.S.C. §§ 1983 and 1988.

6.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and

1343(a)(3) because the controversy arises under the U.S. Constitution and 42 U.S.C.

§ 1983.  Plaintiff also invokes the supplemental jurisdiction of this Court under 28 U.S.C.

§ 1367(a) over state law claims.

7.      Venue is proper in this district in accordance with 28 U.S.C. § 1391(b)

because the events giving rise to Ms. Davis's claims happened in this district.

8.      Declaratory relief is authorized by 28 U.S.C. § 2201. A declaration of law

is necessary to determine the rights and duties of the parties.

## THE PARTIES

9.      Plaintiff Hope Davis is a resident of Marrero, Louisiana.

10.     Defendant Arthur Fernandez, at all times pertinent and relevant to this

action, was employed as a special police officer by the Gretna Police Department

("GPD").  He is sued in his individual capacity.

11.     Defendant Milton Crosby, at all times pertinent and relevant to this action,

was employed as a commissioned police officer by GPD.  He is sued in his individual

capacity.

12.     Defendant Russell Blanchard, at all times pertinent and relevant to this

action, was employed as a commissioned police officer by GPD.  He is sued in his

individual capacity.

13.     Defendants Fernandez, Crosby, and Blanchard are persons for purposes of

42 U.S.C. § 1983.  Defendants were, at all relevant times, acting under the color of state

law in their capacity as police offers for GPD and their acts or omissions were conducted within the scope of their official duties or employment.

## FACTUAL ALLEGATIONS

### Ms. Davis Lawfully Appears at the Gretna Courthouse on September 8, 2020

14.     On September 8, 2020—when the COVID-19 pandemic was raging across the country—Plaintiff Hope Davis was set to appear at the Gretna Municipal Court on a summons for a traffic violation unrelated to the present case.  The courthouse is located at 327 Huey P. Long Avenue in Gretna.  At around 12:45 p.m. that afternoon, Ms. Davis arrived at the courthouse as instructed.

15.     Upon arrival, Ms. Davis discovered a line of people waiting to enter the courthouse, with the line stretching to the Gretna Cultural Center for the Arts, roughly a block away at 740 4th Street.  Ms. Davis joined the line and waited for her turn to enter the courthouse.

16.     As a result of the COVID-19 pandemic, federal guidance then in effect from the Centers for Disease Control and Prevention urged the practice of indoor and outdoor social distancing of six feet between individuals.  State guidance from the Louisiana Department of Health did the same.

### Ms. Davis Is Unlawfully Arrested for Voicing Concerns about the Failure to Enforce Social Distancing Guidelines

17.     While waiting in line, Ms. Davis observed that others in line were not practicing the recommended social distancing, particularly in the vicinity of the courthouse and inside the building.  Concerned for her own health, as well as the well-

being of others, Ms. Davis remarked to others near her in line that social distancing mandates were not being enforced.

18.    A court employee standing nearby overheard Ms. Davis's remark and informed Ms. Davis that court personnel were aware of social distancing guidance.  Not wanting to be rude and ignore the court employee, Ms. Davis responded by simply stating that she had not directed her remark at the court employee.

19.    Defendant Fernandez, who was on duty assisting with courthouse security, overheard Ms. Davis's statement to the court employee.  In response, he approached Ms. Davis, and stated that he did not appreciate the way Ms. Davis had spoken to the court employee.

20.    Ms. Davis told Defendant Fernandez that social distancing mandates were not being enforced and that he could not keep her from stating that fact.

21.    Defendant Fernandez responded by ordering Ms. Davis to leave the courthouse immediately and threatened to arrest her if she did not.

22.    Despite Defendant Fernandez's improper threats directed at Ms. Davis' relevant and audible concerns over social distancing mandates, Ms. Davis declined to leave.  She refused to do so because such an act would amount to her disobeying the summons instructing her to appear at the courthouse.

23.    Defendant Fernandez nonetheless acted on his improper threat and arrested Ms. Davis.  Specifically, he handcuffed her, removed her from the line to the courthouse, and instructed her about her *Miranda* rights.

24.    Up to and through the time that Ms. Davis was arrested, Defendant Fernandez had not personally witnessed, nor been made aware of, any behavior by

-5-

Ms. Davis that a reasonable police officer would believe amounted to a crime being or about to be committed.  At all times up to and through her arrest, Ms. Davis was lawfully present at the courthouse, having been summoned by the court and conducting herself lawfully.

25.     Ms. Davis was publicly humiliated by Defendant Fernandez's unlawful arrest and asked why he was arresting her.  Defendant Fernandez refused to respond to Ms. Davis's questions.

26.     Ms. Davis did not physically resist being placed into handcuffs by Defendant Fernandez.  However, he subsequently tightened the handcuffs further without any need to do so, causing Ms. Davis severe physical pain.  Ms. Davis complained to Defendant Fernandez that he was hurting her, but he refused to loosen the handcuffs.

### Ms. Davis Is Unlawfully Transported to JPCC and Confined in a Holding Cell Leaking Raw Sewage

27.     Around this time, Defendant Fernandez contacted Defendant Crosby and asked to request a patrol unit to transport Ms. Davis to the Jefferson Parish Correctional Center ("JPCC").  Defendants Fernandez and Crosby were thus aware that Ms. Davis would be further detained by law enforcement officers after she was transported to JPCC from the Gretna Municipal Court

28.     Defendant Blanchard arrived to transport Ms. Davis to JPCC.  Ms. Davis informed Defendant Blanchard that her arrest and detention was not lawful. Nevertheless, Defendant Blanchard took Ms. Davis into his custody without making his own determination of whether Ms. Davis's initial arrest had been lawful.

29.     Defendant Blanchard then transported Ms. Davis to JPCC.

30.     Upon arrival, Defendant Blanchard placed Ms. Davis in a holding cell.

31.     The holding cell was physically uncomfortable and unsanitary.  The cell was dark and cold, with no chair or other place for an occupant to sit, and the cell floor had a drain through which raw sewage was actively leaking into the cell.  There was no toilet in the holding cell, and at no time while in the cell was Ms. Davis offered a place to relieve herself.

32.     Ms. Davis was left in these terrible conditions for several hours.  At no time did Defendants or any other person offer Ms. Davis a telephone call, food, water, a toilet, or a mask.

33.     After several hours, on the evening of September 8, 2020. Ms. Davis was released from the holding cell and charged with violations of Gretna's Code of Ordinances, specifically, § 16-114 ("Disturbing the peace") and § 16-49 ("Entry on or remaining in places after being forbidden").

34.     Ms. Davis suffered physically and emotionally throughout the entire ordeal—upon her unlawful and humiliating arrest, while being transported to JPCC, and while being detained in a holding cell at JPCC.

## FIRST CAUSE OF ACTION
## 42 U.S.C. § 1983 – False Arrest in Violation of the Fourth and Fourteenth Amendments
(As to Defendant Fernandez)

35.     Plaintiff incorporates and re-alleges the above allegations in full.

36.     The Fourth Amendment of the U.S. Constitution protects citizens against unreasonable search and seizure by law enforcement officers.

37.     The Fourteenth Amendment of the U.S. Constitution protects citizens against arbitrary deprivation of life, liberty, or property by the state.

38.     The Fourth and Fourteenth Amendments prohibit arrest without probable cause.

39.     Defendant Fernandez arrested Ms. Davis without probable cause.  The lack of probable cause to arrest Ms. Davis would have been evident to any reasonable person based on the facts and circumstances within Defendant Fernandez's knowledge at the time.  Defendant Fernandez did not witness Ms. Davis break any law, nor did he have any reason to believe that she had broken any law.

40.     By arresting her without probable cause, Defendant Fernandez violated Ms. Davis's Fourth and Fourteenth Amendment rights.

41.     Any reasonable police officer would have known that arresting Ms. Davis under these circumstances would violate her constitutional rights.

42.     As a direct and proximate result of this false arrest, Ms. Davis suffered actual physical, emotional, and economic harm.

43.     Ms. Davis is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 – Retaliatory Arrest in Violation of the First Amendment**
(As to Defendant Fernandez)

44.     Plaintiff incorporates and re-alleges the above allegations in full.

45.     The First Amendment of the U.S. Constitution protects the rights of citizens to engage in certain constitutionally protected activity.  Individual speech

regarding matters of public health, such as the COVID-19 pandemic, is one example of such protected activity.

46.     Speaking in public regarding government health mandates is a protected activity, and the First Amendment prohibits law enforcement officers from retaliating against a citizen engaging in that activity.

47.     At the time of the incident, Ms. Davis had a constitutional right under the First Amendment to speak to others around her regarding the ongoing failure of the Gretna Municipal Court to follow government-issued mandates to protect the public's health and well-being.

48.     Defendant Fernandez was upset by Ms. Davis's protected speech and sought to curtail it by threatening to arrest Ms. Davis.  In doing so, Defendant Fernandez violated Ms. Fernandez's First Amendment rights.

49.     Any reasonable law enforcement officer would have known that this conduct would violate Ms. Davis's constitutional rights.

50.     As a direct and proximate result of Defendant Fernandez's retaliation, Ms. Davis suffered actual physical, emotional, and economic harm.

51.     Ms. Davis is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

**THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983 – Unlawful Seizure in Violation of the Fourth Amendment**
(All Defendants)

52.     Plaintiff incorporates and re-alleges the above allegations in full.

53.     The Fourth Amendment of the U.S. Constitution protects citizens against unlawful seizure of their person by law enforcement officers.

54.     The Fourth Amendment prohibits law enforcement officers seizing a citizen without legal justification.

55.     Defendants arrested Ms. Davis, transported her to JPCC, and detained her there without probable cause.  By doing so, they violated Ms. Davis's Fourth Amendment rights.

56.     Any reasonable police officer would have known that seizing Ms. Davis under these circumstances would violate her constitutional rights.

57.     As a direct and proximate result of Defendants' unlawful seizure, Ms. Davis suffered actual physical, emotional, and economic harm.

58.     Ms. Davis is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

**FOURTH CAUSE OF ACTION**
**State Law – False Arrest**
(As to Defendant Fernandez)

59.     Plaintiff incorporates and re-alleges the above allegations in full.

60.     Ms. Davis's arrest was unlawful because there was no probable cause for the arrest.  Defendants had no reasonable basis to believe that she had violated any state law or municipal code.

61.     The facts and circumstances within Defendants' knowledge during their interaction with Ms. Davis would not have caused a reasonable person to conclude that Ms. Davis had committed or was in the process of committing any offense.

62.     As a direct and proximate result of this false arrest, Ms. Davis suffered actual physical, emotional, and economic harm.

**FIFTH CAUSE OF ACTION**
**State Law – False Imprisonment**
(All Defendants)

63.     Plaintiff incorporates and re-alleges the above allegations in full.

64.     Ms. Davis was arrested, transported to the JPCC, and held there without probable cause for her arrest.  Her detention thus was unlawful.

65.     Defendants caused this unlawful detention by arresting and detaining her without probable cause.

66.     As a direct and proximate result of her unlawful detention, Ms. Davis suffered actual physical, emotional, and economic harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against each of the Defendants, jointly and severally, and award the following relief:

a.      a declaration that Defendants' conduct violated the First, Fourth, and Fourteenth Amendments of the United States Constitution;

b.      attorneys' fees and costs associated with this action, including expert witness fees, on all claims allowed by law; and

c.      any other relief that the Court deems just and proper.

Dated: September 8, 2021

Respectfully submitted,

*/s/ Megan E. Snider*

Megan E. Snider
LA. Bar No. 33382
Nora Ahmed*
ACLU FOUNDATION OF LOUISIANA 1340
Poydras St, Ste. 2160
New Orleans, LA 70112
Tel: 318 512 6915
msnider@laaclu.org
nahmed@laaclu.org
justicelab@laaclu.org

Seth Boeshore*
VENABLE LLP
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
Tel: 212 218 2540
sboeshore@venable.com

*Counsel for Plaintiff Hope Davis*
***Pro hac vice forthcoming*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing in the Court's CM/ECF system which will automatically provide notice to all counsel of record, this 8th day of September, 2021.


/s/ Megan E. Snider
_____
Megan E. Snider